IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-01811-PAB-CBS

TANYA L. PAIGE,
     Plaintiff,
v.

SHAUN DONOVAN, Secretary United States Department of Housing and Urban Development,
and UNITED STATES OF AMERICA,
     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

     This civil action comes before the court on the United States' "Motion to Dismiss" (filed Nov. 19, 2009) (doc. #29). Specifically, the motion seeks to dismiss the state tort claim of intentional infliction of emotional distress. Pursuant to the Order of Reference dated August 5, 2009 (doc. #4), this matter was referred to the Magistrate Judge. The court has reviewed the motion, Ms. Paige's "Motion of Response" (Response) (filed Dec. 2, 2009) (doc. #33), the United States' "Reply to Plaintiff's Response" (Reply) (filed Dec. 17, 2009) (doc. #38), Ms. Paige's "Response to United States' Reply" (Surreply) (filed Dec. 28, 2009) (doc. #40), the entire case file, the pleadings and the applicable law and is sufficiently advised in the premises.

I.    **Background**

     Ms. Paige commenced this action on July 31, 2009, alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 (Title VII) against

two of her supervisors, Karen Kay Baker and Cynthia L. Loftus, as well as the Secretary of the Department of Housing and Urban Development (H.U.D.), Shaun Donovan. (Complaint (filed July 31, 2009) (doc. #2)). In addition, Ms. Paige has alleged a state law tort claim for intentional infliction of emotional distress pursuant to the Federal Tort Claims Act (F.T.C.A.). (Amended Complaint (filed Aug. 13, 2009) (doc. #8) at ¶¶ 2, 22). The individual supervisors (Ms. Baker and Ms. Loftus) were replaced after an Unopposed Motion for Substitution was granted. (*See* Unopposed Motion for Substitution (filed Oct. 23, 2009) (doc. #26)). Shaun Donovan, in his official capacity, and the United States of America are the remaining defendants in this matter. (*See* Minute Order (filed Nov. 12, 2009) (doc. #28)).

Ms. Paige filed a complaint with the Equal Employment Opportunity Commission (E.E.O.C.) on November 16, 2006 alleging race discrimination on the basis of her status as an African American. (Complaint (doc. #2) at p. 4 of 9). In her E.E.O.C. complaint, Ms. Paige alleged that she was placed on performance evaluation programs and was given critical evaluations and poor performance ratings. (*Id.* at pp. 5-6 of 9, ¶¶ 1, 3). Ms. Paige alleged that the evaluation methods adopted by her supervisors were overly subjective and were applied more stringently to her than to her non-African American co-workers. (*Id.* at p. 5 of 9, ¶ 2). Ms. Paige also alleged that she was excluded from staff meetings and informal lunches. (*Id.* at p. 6 of 9, ¶ 5). Due to this alleged discriminatory conduct, Ms. Paige claims that she missed out on advancement opportunities, opportunities to increase her earning capacity with "special projects" and important office relationships. (*Id.* at p. 6 of 9, ¶ 4). Ms. Paige also requested "compensatory damages for emotional distress and humiliation." (*Id.* at p. 7 of 9). The E.E.O.C. complaint contains nothing specifically alleging a state law tort claim for intentional infliction of

emotional distress. (*See* Complaint (doc. #2) at pp. 4-7 of 9). While Ms. Paige alleges in her response that witness statements were sent to the E.E.O.C. to corroborate her claim of emotional distress, the record does not contain any such statements. (*See* Response (doc. #33) at ¶ 8).

On January 18, 2008, Ms. Paige's former counsel, Mr. David Lichtenstein, sent a settlement proposal to Ms. Lisa Coronado, Agency Representative and Counsel for H.U.D.. (*See* Surreply (doc. #40) at p. 6 of 8). The letter was in regards to the E.E.O.C. complaint and stated that Mr. Lichtenstein had found "no legitimate nondiscriminatory or nonretaliatory reason for the agency's actions in placing Ms. Paige on an OIP/PIP [performance evaluation program], and refusing to consider her for acting branch chief positions[.]" (*Id.*). The letter went on to list the damages that have been suffered by Ms. Paige because of the "[a]gency's discriminatory conduct." (*Id.*). Under the subheading of "Medical expenses," it is alleged that Ms. Paige has "incurred out-of-pocket medical expenses of $4,765 as a result of the stress of discriminatory and retaliatory treatment." (*Id.* at p. 7 of 8). Under the subheading of "Non-economic damages" it is alleged that Ms. Paige "suffered significant emotional distress and humiliation which she values, for settlement purposes, at $42,000." (*Id.*). There is no mention of intentional or outrageous conduct or any reference to a state law tort claim.

On May 12, 2009, Ms. Paige received a letter from the E.E.O.C. informing her that she had "failed to prove that she was subjected to discrimination" but granting her permission to sue. (Complaint (doc. #2) at p. 8 of 9). On August 13, 2009 (one month after the filing of the original complaint), Ms. Paige's amended complaint alleged a claim for intentional infliction of emotional distress. (*See* Amended Complaint (doc. #8) at p. 1 of 8). As late as November 13, 2009, the unit responsible for processing all of the tort claims that are filed with H.U.D. had not

received a claim from Ms. Paige. (*See* Declaration (filed Nov. 19, 2009) (doc. #29-2)).

II.    **Standard of Review**

A motion under Rule 12(b)(1) is a request upon the court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) may take one of two forms. First, a party may make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby questioning the sufficiency of the complaint. In addressing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. In addressing a factual attack, the court does not presume the truthfulness of the complaint's factual allegations, but has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *U.S. v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (citing *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

The United States' motion to dismiss for lack of jurisdiction shall be construed as a factual attack upon the complaint. In support of its motion, the United States alleges that Ms. Paige has failed to exhaust administrative remedies, a jurisdictional prerequisite created by the F.T.C.A.. *See Bradley v. U.S.*, 951 F.2d 268, 270 (10th Cir. 1991) (quoting *Three-M Enters., Inc. v. U.S.*, 548 F.2d 293, 295 (10th Cir. 1977)). Because the court must evaluate whether the factual circumstances establish jurisdiction, the court will consider the additional materials that have been submitted in addition to the pleadings and need not take all of the plaintiff's allegations as

true.  *See Sizova v. Nat. Inst. of Standards & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (citing

*Holt*, 46 F.3d at 1003).  "A court's consideration of matters outside the pleadings does not

transform the Rule 12(b)(1) motion into one for summary judgment."  *Cizek v. U.S.*, 953 F.2d

1232, 1233 (10th Cir. 1992).


III.  **Analysis**

Ms. Paige has brought the state tort law claim of intentional infliction of emotional

distress pursuant to the F.T.C.A.[1]  Before a plaintiff may commence an action pursuant to

F.T.C.A., she must first exhaust administrative remedies.[2]  "Because the F.T.C.A. constitutes a

waiver of the government's sovereign immunity, the notice requirements established by the

F.T.C.A. must be strictly construed."  *Bradley,* 951 F.2d at 270.  "The requirements are

jurisdictional and cannot be waived."  *Id.*  Generally, a plaintiff should file a Standard Form 95

---

[1]Under Colorado law, to establish a claim for intentional infliction of emotional distress, the plaintiff must allege the following: "(1) the defendant engaged in extreme and outrageous conduct; (2) the defendant engaged in conduct recklessly or with the intent of causing the plaintiff severe emotional distress; and (3) the plaintiff incurred severe emotional distress that was caused by the defendant's extreme and outrageous conduct."  *Brunetti v. Rubin*, 999 F. Supp. 1408, 1412 (D. Colo. 1998) (citing *Culpepper v. Pear Street Bldg*., Inc., 877 P.2d 877, 882 (Colo. 1994)).

[2]Title 28 U.S.C. § 2675(a) (2006): "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

(SF95) with the agency engaged in allegedly wrongful conduct.[3]  However, "[w]e recognize that 28 C.F.R. § 14.2(a) [and 28 C.F.R. § 17.2(a)] allow for notification to the appropriate agency in a form other than a SF95."  *Id.* at 271.  Although an SF95 form is not strictly required, an alternative form of notice must consist of "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim."  *Staggs v. U.S.*, 425 F.3d 881, 884 (10th Cir. 2005) (quoting *Cizek*, 953 F.2d at 1233).

Ms. Paige fails the exhaustion requirement on the first prong.  To start, Ms. Paige did not file an SF95 form with H.U.D.  (*See* Declaration (doc. #29-2)).  However, as stated above, the statute has been interpreted to allow other forms of written notice in certain circumstances.  *See Kendall v. Watkins*, 998 F.2d 848, 852 (10th Cir. 1993) (reasoning that letters written to the secretary of plaintiff's department may have been considered as potential notice, had she also included a sum certain).  Other circuits have held that "the process of exhausting E.E.O.C. remedies may, in some cases, satisfy the notice requirement set forth in the F.T.C.A.."  *Scanlan v. Potter*, 2007 WL 602101, *4 (D.Vt. 2007) (citing *Wilds,* 989 F. Supp. at 187 (holding that plaintiff failed to set forth facts that would notify the government of a planned tort claim)).  However, where courts have generously allowed a form of notice other than a formal written statement of the claim with a certain request for damages, they still require that the writing

---

[3]*See* 24 C.F.R. § 17.2(a): "For purposes of this subpart, a claim shall be deemed to have been presented when the Department receives ... an executed Claim for Damages or Injury, Standard Form 95, or other written notification of an incident, accompanied by a claim for money damages in a sum certain for ... personal injury[.]  A claim which should have been presented to the Department, but which was mistakenly addressed to or filed with another Federal agency, is deemed to be presented to the Department as of the date that the claim is received by the Department[.]"; *see also Wilds v. U.S. Postmaster General*, 989 F. Supp. 178, 187 (D.Conn. 1997) (stating that "[p]referably, plaintiff should have filed a Standard Form 95 with the Postal Service.").

provide adequate notice of facts that would alert the agency to the F.T.C.A. claim. Ms. Paige

has failed to fulfill this requirement in her E.E.O.C. complaint and the settlement proposal that

she has asked the court to consider. (*See* Complaint (doc. #2) at. pp. 4-7 of 9; *see also* Surreply

(doc. # 40) at pp. 6-8 of 8).

The Tenth Circuit has held that the written notice must provide enough information to

reveal "the underlying facts and circumstances" of the claim. *Staggs*, 425 F.3d at 884 (quoting

*Estate of Trentadue ex rel. Aguilar v. U.S.*, 397 F.3d 840, 853 (10th Cir. 2005)). The facts

communicated by Ms. Paige failed to "describ[e] the injury to enable the agency to begin its own

investigation[.]" *Id.* There was nothing to alert the agency of the need to investigate tortious

conduct or the effects of extreme emotional distress. In Ms. Paige's E.E.O.C. complaint, she

claimed that her supervisors were responsible for placing her on performance evaluations,

subjecting her to a higher level of scrutiny than her non-African American co-workers and

excluding her from informal office meetings. However, Ms. Paige failed to provide examples of

intentional or outrageous conduct, nor did she describe any resulting emotional effects. The only

mention of any emotional effect is in Ms. Paige's request for relief from her E.E.O.C. claim,

requesting "compensatory damages for emotional distress and humiliation," damages that are

available under Title VII. (Complaint (doc. #2) at p. 7 of 9).

Ms. Paige failed to provide the agency with facts alerting them to anything but

potentially discriminatory conduct in evaluation and promotional decisions. (*See* Complaint

(doc. #2) at pp. 4-7 of 9; *see also* Surreply (doc. #40) at pp. 6-8 of 8). Similarly, in *Bethel v.

U.S.*, the Tenth Circuit held that the plaintiff lacked the requisite facts and circumstances for a

claim of lack of informed consent because her lengthy complaint failed to mention the word

"'consent' or a suitable synonym." 495 F. Supp. 2d 1121, 1125 (D. Colo. 2007) (quoting *Staggs*, 425 F.3d at 885). The court reasoned that the defendant "could have reasonably concluded that a claim of lack of informed consent was not intended and that an investigation into lack of informed consent was unnecessary." *Id.* Ms. Paige provided an extensive disclosure of facts and circumstances that tend to support a claim for racial discrimination. However, the only places where Ms. Paige briefly mentioned emotional distress can be found in the request for relief or in the request for settlement. Her failure to mention any outrageous conduct or severe emotional distress in any detail could have reasonably led the agency to believe that the state tort law claim of intentional infliction of emotional distress was not intended. *See id.* at 1125; *compare Estate of Trentadue ex rel. Aguilar*, 397 F.3d at 853 (holding that plaintiffs' complaint to agency did provide notice of the facts and circumstances surrounding their emotional distress claim where the complaint stated that the "acts ... were so extreme as to exceed all bounds of what is tolerated in a civilized community."). Because all of the potential "notice" was directed to her Title VII claim and failed to describe any tortious conduct or severe emotional distress, Ms. Paige failed to exhaust her administrative remedies.

Ms. Paige cannot base her claim of intentional infliction of emotional distress on the same discriminatory conduct that provides the basis of her Title VII claim. In *Ford v. West*, the Tenth Circuit held that the plaintiff's § 1985(3) claim must fail because "the Supreme Court has clearly held that Title VII provides the exclusive remedy for discrimination claims in federal employment." 222 F.3d 767, 773 (10th Cir. 2000) (citing *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976)); *see also Belhomme v. Widnall*, 127 F.3d 1214, 1217 (10th Cir. 1997) (holding plaintiff's constitutional claims failed "because the Supreme Court has clearly stated that a

federal employee's only avenue for judicial relief from federal employment discrimination is through Title VII."). In *Brunetti*, the District Court noted that the Tenth Circuit "has never addressed whether Title VII subsumes or preempts a state law tort claim" but "[b]y all indications, [it] is the exclusive remedy available to federal employees for the redress of federal employment 'discrimination.'" 999 F. Supp. at 1411. The court went on to say that when "harms suffered by the federal employee involve more than discrimination, such harms may implicate other distinct rights, such as the right to be free from ... intentional infliction of emotional distress." *Id.* at 1412. The court dismissed the plaintiff's emotional distress claim "to the extent that [it sought] redress for the alleged gender discrimination," but it allowed the claim to go forward "to the extent [it sought] redress for [her supervisor] Medeiros' alleged tortious behavior." *Id.* The plaintiff in *Brunetti* was the victim of "offensive touching of a sexual nature that could cause severe emotional distress." *Id.*

The Ninth Circuit has taken a similar approach to this issue. In *Brock v. U.S.*, the court held that "[if] the type of harm is [a] highly personal [violation] then ... Title VII is not the victim's exclusive remedy[.]" 64 F.3d 1421, 1423 (9th Cir. 1995) (internal citation omitted). In developing the standard for "highly personal" the court stated that "[a]llegations of discriminatory failure to promote, retaliation for discrimination complaint, and constructive discharge do not state more than an employment discrimination claim and are therefore not separately actionable." *Id.* (internal citation omitted). Further, the court went on to hold the plaintiff's F.T.C.A. claim separately actionable because it was based on the plaintiff's alleged rape by a supervisor. *See id.; see also Schroder v. Runyon*, 1 F. Supp. 2d 1272, 1279 (D. Kan. 1998) (declining to accept plaintiff's *Brock* argument because plaintiff's retaliatory discharge

claim [did] not rise to the level of the "highly personal wrongs present in *Brock*.").

In her E.E.O.C. documentation, Ms. Paige did not put forth any facts or allegations describing tortious conduct on behalf of the government or her individual supervisors. The harms described by Ms. Paige fail to implicate her right to be free from intentionally tortious conduct. *See Brunetti*, 999 F. Supp. at 1412; (*see generally* Complaint (doc. #2); Surreply (doc. #40); Amended Complaint (doc. #8)). Rather, the descriptions that were provided involve mere procedural measures taken by Ms. Paige's supervisors in an allegedly discriminatory manner. (*Id.*). Ms. Paige does not allege to be the victim of offensive touching nor does she put forth facts that demonstrate racial animus so extreme as to implicate her "right to be free from ... intentional infliction of emotional distress." *See Brunetti*, 999 F. Supp. at 1412; *see also Brock*, 64 F.3d at 1423.

To the extent Ms. Paige argues that she provided sufficient notice in her amended complaint, this fails to satisfy the jurisdictional requirement. (*See* Amended Complaint (doc. #8) at ¶¶ 2, 22 (stating a claim for "intentional infliction of emotional distress")). The text of F.T.C.A. § 2675(a) specifically states that "[a]n action shall not be instituted ... against the United States ... unless the claimant shall have *first* presented the claim to the appropriate Federal agency[.]"[4] The United States Supreme Court held in *McNeil v. U.S.* that the "statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." 508 U.S. 106, 112 (1993). The plaintiff argued that "[a]s long as no substantial progress has been made in the litigation by the time the claimant has exhausted his administrative remedies, the federal agency will have had a fair opportunity to

---

[4]Title 28 U.S.C. § 2675(a) (2006) *supra* note 2.

investigate and possibly settle the claim before the parties must assume the burden of costly and time-consuming litigation." *Id.* at 111. In rejecting this argument, the court reasoned that premature filings impose a burden on the judicial system and the best method for serving that interest is to strictly abide by the unambiguous language of the statutory text. *See id.* at 112. In addition, the Tenth Circuit held in *Dunlap v. Harper* that "[a]llowing claimants generally to bring suit under the F.T.C.A. before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." 188 F.3d 1195, 1199 (10th Cir. 1999). Even though Ms. Paige's amended complaint gave notice of a claim for intentional infliction of emotional distress, she was required to provide notice to the agency before the commencement of this action.

Because Ms. Paige failed to notify the appropriate administrative agency of a potential state law tort claim, and continually failed to present them with facts or circumstances giving rise to tortious or extreme conduct, she has not exhausted administrative remedies. Since Ms. Paige has failed to satisfy the requirements under the F.T.C.A., it is recommended that her amended complaint be dismissed to the extent that it purports to assert a claim under the Federal Tort Claims Act.

Furthermore, Ms. Paige fails the second prong of the administrative exhaustion requirement. A plaintiff's written notice must provide a sum certain in damages that is being sought. *Staggs*, 425 F.3d at 884. This requirement, along with the sufficient factual notice, is strictly construed. *See Gladden v. U.S. Dep't of Justice*, 18 Fed.Appx. 756, 758 (10th Cir. 2001) (holding that "plaintiff's valuation of his claim as in excess of $100,000 was insufficient to

satisfy the sum certain requirement.") (internal citations omitted). The Tenth Circuit has held

that "[f]ailure to comply with the sum certain requirement results in the case being treated as if

no administrative claim had ever been filed." *Id.* (internal citations omitted). While Ms. Paige's

settlement proposal requested damages of $42,000 and $4,765 for "[n]on-economic" and

"[m]edical expenses," neither the proposal nor the E.E.O.C. complaint provided notice of the

facts and circumstances or a sum certain for a tort claim. (*See* Surreply (doc. #40) at pp. 6-8 of

8; *see also* Complaint (doc. #2) at pp. 4-7 of 9).

Accordingly, IT IS RECOMMENDED that the United States' "Motion to Dismiss" (filed

Nov. 19, 2009) (doc. #29) be GRANTED and Ms. Paige's claim for Intentional Infliction of

Emotional Distress be dismissed.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the District Court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real*

*Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir.

1996). Failure to make timely objections may bar *de novo* review by the District Judge of the

Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 2nd day of April, 2010.

BY THE COURT:


    s/Craig B. Shaffer
United States Magistrate Judge