IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 09-cv-01811-WJM-CBS

TANYA L. PAIGE,

      Plaintiff,

v.

SHAUN DONOVAN, Secretary, United States Department of Housing and Urban
Development,

      Defendant.

---

## ORDER ADOPTING THE RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Plaintiff's Amended Complaint was filed *pro se* and brings claims for racial,

religious, and gender discrimination, as well as retaliation and hostile work environment,

in violation of Title VII of the Civil Rights Act of 964, 42 U.S.C. § 2000e-5 ("Title VII")

against three of her supervisors at the United States Department of Housing and Urban

Development ("HUD").[1]  (ECF No. 8.)  The United States was substituted as the

Defendant in place of the individual supervisors.  (ECF No. 28.)   Counsel appeared on

behalf of Plaintiff after discovery had closed but before Plaintiff's opposition to

Defendant's Motion for Summary Judgment was filed.  (ECF No. 117.)

On August 1, 2011, the Magistrate Judge issued his Recommendation that

---

[1]  Plaintiff's Amended Complaint also brought a claim for intentional infliction of emotional distress but that claim was previously dismissed for failure to comply with the administrative exhaustion requirements of the Federal Tort Claims Act.  (ECF Nos. 49 & 67.)

Defendant's Motion for Summary Judgment be granted in its entirety.  (ECF No. 135.)

Plaintiff filed timely objections to the Recommendation (ECF No. 136) and Defendant

has responded to those objections.  (ECF No. 137.)

For the reasons stated below, Plaintiff's objections to the Recommendation are

OVERRULED, the Magistrate Judge's Recommendation is ADOPTED, and Defendant's

Motion for Summary Judgment is GRANTED.

## I.  LEGAL STANDARD

When a magistrate judge issues a recommendation on a dispositive matter,

Federal Rule of Civil Procedure 72(b)(3) requires that the district court judge "determine

de novo any part of the magistrate judge's [recommendation] that has been properly

objected to." Fed. R. Civ. P. 72(b)(3).  In conducting its review, "[t]he district court judge

may accept, reject, or modify the recommendation; receive further evidence; or return

the matter to the magistrate judge with instructions." *Id.*

Summary judgment is appropriate only if there is no genuine issue of material

fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem*

*Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute

as to a material fact depends upon whether the evidence presents a sufficient

disagreement to require submission to a jury or conversely, is so one-sided that one

party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49

(1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal*

*Service*, 812 F.2d 621, 623 (10th Cir. 1987).

A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson*, 477 U.S. at 248. The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial. *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

The analysis to be applied on a motion for summary judgment differs depending on whether the moving party is also the party with the burden of proof at trial. Where, as here, the non-movant bears the burden of proof at trial, the non-movant must point to specific evidence establishing a genuine issue of material fact with regard to each challenged element. *In re Ribozyme Pharmaceuticals, Inc. Securities Litigation*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002); *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002).

## II. **FACTUAL BACKGROUND**

Neither party objects to the recitation of facts set forth by the Magistrate Judge in the Recommendation. (ECF No. 135 at 3-10.) Accordingly, the Court adopts and incorporates Section II of the Recommendation as if set forth herein. To the extent any additional facts are necessary for the Court's resolution of the summary judgment motion, such facts will be set forth in the analysis section below.

## III. **ANALYSIS**

The Magistrate Judge's Recommendation contains the following findings and conclusions: (1) Plaintiff had failed to exhaust her constructive retirement and/or discharge claims, gender and religious discrimination claims, and any claim related to

the failure to transfer or reassign her to another division; (2) Plaintiff failed to show a material factual dispute as to her claim for racial discrimination; (3) Plaintiff failed to show a genuine issue of material fact in dispute as to her retaliation claim; (4) Plaintiff failed to identify a material factual dispute with respect to her hostile work environment claim; and (5) the Court lacks jurisdiction over Plaintiff's *Weingarten* claim.  (ECF No. 135.)  Plaintiff objects at least in part to each of these findings.  (ECF No. 136.)  The Court will review *de novo* each portion to which a specific objection was made. Otherwise, the Court will review the Recommendation for clear error.

## A.    Exhaustion

The Magistrate Judge found that Plaintiff had failed to exhaust any claim related to gender discrimination, constructive retirement or discharge, failure to transfer or reassign to another division, and religious discrimination based on her July 18, 2008 request to take religious compensatory leave.  (ECF No. 135 at 10-16.)  Plaintiff's only objection to this finding is with respect to constructive retirement.  Plaintiff alleges that the Magistrate Judge's finding that "her reference to being forced to retire did not put the EEO on notice of the facts leading to the constructive discharge claim."  (ECF No. 136 at 2.)

Plaintiff filed two charges with federal Equal Employment Opportunity ("EEO") counselors related to the facts underlying this case.  The first was filed on November 16, 2006 and amended on May 10, 2007.  Her second charge was filed on November 1, 2008.  (ECF No. 96-2.)  The scope of these charges and the investigation that followed dictates which claims were exhausted for purposes of this Court's subject matter jurisdiction.  *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007).

Plaintiff did not retire until May 1, 2009, nearly two years after her first charge and six months after her second.  The only mention of possible retirement is a passing comment in her EEO investigation report stating that Plaintiff was requesting "an end to the discrimination against her, which includes discipline and attempts to force her to retire."  (ECF No. 122-11 at 2.)  Plaintiff argues that this put the EEO on notice of the facts leading to her constructive discharge claim.

The Tenth Circuit has rejected this argument and held that "a claim of constructive discharge requires filing an administrative charge."  *Chapman v. Carmike Cinemas*, 307 F. App'x 164, 174 (10th Cir. 2009).  Although "constructive discharge may be akin to a hostile environment claim in that a constructive discharge theory generally rests on a series of discriminatory events and incidents," once the constructive discharge is complete, "the discharge is most akin to a wrongful discharge by the employer, which is a discrete and identifiable act" that requires its own administrative charge in order to be exhausted.  *Id.*

It is undisputed that Plaintiff did not file a third EEO charge after she retired from HUD.  She also failed to amend either of her prior charges to explicitly include a claim of constructive discharge based on her allegedly involuntary retirement.  Thus, the Court agrees with the Recommendation and finds that Plaintiff has failed to exhaust any claim related arising out of or related to her allegedly forced retirement.

The Court also adopts the unobjected to findings in the Recommendation that Plaintiff has failed to exhaust any claims related to gender discrimination, failure to reassign to another division, and religious discrimination arising out of her July 18, 2008 religious leave request.  Accordingly, Defendant's Motion for Summary Judgment is

granted with respect to the aforementioned claims and these claims are dismissed without prejudice for failure to exhaust.

## B.    Weingarten Claim

Plaintiff's Amended Complaint alleges that she was denied a union representative at multiple meetings between August 14, 2006 and November 1, 2007. (ECF No. 8 ¶ 39.)  The Magistrate Judge found that Plaintiff had failed to allege sufficient facts showing that she had exhausted this claim.  (ECF No. 135 at 42-43.) Plaintiff objects to this finding.

In *National Labor Relations Board v. J. Weingarten, Inc.*, 420 U.S. 251, 262 (1975), the Supreme Court held that a union employee is entitled to representation at any proceeding, interview, or meeting in which the risk of discipline could be present. This right arises out of National Labor Relations Act and any violation is considered an unfair labor practice.  *Id.*

The Federal Service Labor-Management Relations Statute, 5 U.S.C. § 7101 *et seq.*, "precludes a federal district court from considering in the first instance unfair labor practices charges directed at federal agencies."  *Black v. Reno*, 2000 WL 37991, at *9 (S.D.N.Y. Jan. 18, 2000) (citations omitted).  A court may exercise subject matter jurisdiction over a *Weingarten* claim based on a federal agency's alleged unfair labor practices only where the plaintiff has first exhausted her administrative remedies.  *Id.* (citing *Karahalios v. National Federation of Federal Employees, Local 1263*, 489 U.S. 527 (1989); *Walsh v. United States*, 588 F.Supp. 523, 526 (N.D.N.Y. 1983)).

Plaintiff's Amended Complaint does not allege that she has pursued any administrative remedies with respect to her *Weingarten* claim.  The Court therefore

adopts the Recommendation's finding that the allegations in the Amended Complaint are insufficient to establish subject matter jurisdiction in this Court.  Plaintiff's *Weingarten* claim is dismissed without prejudice.

## C.  Hostile Work Environment

Plaintiff alleges that she was subjected to a hostile work environment due to her race in violation of Title VII.  To show that she was subjected to hostile work environment, Plaintiff is required to show: (1) her workplace was "permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of [her] employment," and (2) that she "was subjected to this abusive environment because of her" race.  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1170 (10th Cir. 2007).  In determining whether an actionable hostile work environment existed, the Court must consider "all the circumstances," *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002), viewed through the perspective of a reasonable person in Plaintiff's position.  *Montes*, 497 F.3d at 1170.

The Magistrate Judge found that Plaintiff had alleged seven discrete events in support of her hostile work environment claim and declined to aggregate Plaintiff's discrete events.  (ECF No. 135 at 38-39.)  The Magistrate Judge found that Plaintiff had failed to show that she was subjected to a racially hostile environment that was severe or pervasive enough to alter the conditions of her employment.  (ECF No. 135 at 40-41.) The Magistrate Judge also found that Plaintiff had failed to sufficiently tie any allegedly hostile acts to her race.  (*Id.*)  Plaintiff objects to these findings.

Plaintiff first argues that she is not required to tie the challenged employment actions to her race.  (ECF No. 136 at 8.)  Though Plaintiff may be able to use events

that are not overtly race-based in showing that she was subjected to a hostile work environment, she must show that at least some harassing acts were race-related or that only members of her race were subjected to this behavior. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80–81 (1998) (approving these methods in the analogous context of sexual harassment); *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005).

None of the challenged events were overtly related to her race; there is no evidence of racial slurs, comments, or otherwise outwardly racially-motivated behavior. Because she has failed to show that any of the challenged events were overly racially-motivated, she must show that only members of her race were subjected to certain actions. "Harassment is based on race when it would not have occurred but for the plaintiff's race; the harassing conduct need not be overtly racist to qualify." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011).

Plaintiff has failed to meet this standard. Plaintiff had a female African-American co-worker who held the same position as Plaintiff and was supervised by the same individuals that allegedly created her hostile work environment. (ECF No. 122-14 at 4.) There is no allegation that this similarly-situated individual suffered the same harassing behavior as Plaintiff. In fact, Plaintiff repeatedly contends that she was the only person subjected to these behaviors. (ECF No. 122 ¶ 42; 122-14 at 8; 122-30.) Thus, Plaintiff has failed to show that "but for" her race, she would not have suffered the alleged harassment. *Williams*, 643 F.3d at 512; *Herrera v. Lufkin Industries, Inc.*, 474 F.3d 675, 683 (10th Cir. 2007); *Hargrave v. County of Atlantic*, 262 F.Supp.2d 393, 418 (D.N.J. 2003) (granting summary judgment in similar circumstances where plaintiff had shown

that co-workers were rude but failed to link such behavior to plaintiff's race).

Plaintiff bears the burden on summary judgment to show that the hostile work environment was based on her race. *Oncale*, 523 U.S. at 81 ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at discrimination because of sex or race."); *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998). She has failed to do so. Accordingly, the Court adopts the recommendation that Defendant's Motion for Summary Judgment be granted as to Plaintiff's hostile work environment claim.

## D.    Failure to Accommodate Religious Beliefs

Plaintiff alleges that Defendant failed to accommodate her religious beliefs in March 2007 by making it difficult for her to take leave for Kwanzaa activities. The Magistrate Judge found that Plaintiff had failed to satisfy her *prima facie* burden because she had failed to show that Kwanzaa was a *bona fide* religious belief and failed to show that she was disadvantaged in any way. (ECF No. 135 at 31-32.) Plaintiff has not objected to these findings. The Court has reviewed the findings and sees no clear error. *See* Fed. R. Civ. P. 72(b) advisory committee's note; *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings".).

Accordingly, the Magistrate Judge's Recommendation is adopted with respect to Plaintiff's claim for religious discrimination and/or failure to accommodate for religious beliefs. Plaintiff's religious discrimination and/or failure to accommodate claim is dismissed with prejudice.

### E.     Racial Discrimination

The familiar *McDonnell Douglas* framework applies to Plaintiff's race

discrimination claims.  *See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th

Cir. 2002).  Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case

of employment discrimination.  *Id.*  To establish a prima facie case for racial

discrimination, Plaintiff must show: (1) she is a member of a protected class; (2) she

suffered an adverse employment action; and (3) the challenged action took place under

circumstances giving rise to an inference of discrimination.  *EEOC v. PVNF, LLC*, 487

F.3d 790, 800 (10th Cir. 2007).  The first prong is not in dispute.  As an African-

American employee, Plaintiff is a member of a protected class.  The second and third

prongs, however, are disputed by the parties.

If the plaintiff satisfies the prima facie requirement, then the burden shifts to the

defendant to provide a legitimate, non-discriminatory reason for their action.  *Garrett*,

305 F.3d at 1216.  Then, the plaintiff must offer evidence to show that race was a

determinative factor in the employment decision or that the defendant's

non-discriminatory reason was merely pretext.  *Id.*

The Magistrate Judge found that Plaintiff had failed to satisfy her *prima facie*

burden because she had failed to show that she suffered an adverse employment

action.  He also found that, assuming Plaintiff had satisfied her *prima facie* burden, she

had failed to show that Defendant's proffered non-discriminatory reason for the

employment decisions was pretextual.  (ECF No. 135 at 17-34.)  Plaintiff objects to

these findings.

### 1.     Exhaustion

The Court can consider only those employment actions that were properly exhausted by Plaintiff, *i.e.,* ones in which Plaintiff contacted an EEO counselor within 45 day of the challenged action. The record shows that Plaintiff contacted an EEO counselor on at least the following occasions:

- August 2, 2006 - first contact with EEO counselor (ECF No. 96-2 ¶ 3)

- October 12, 2006 - e-mail to EEO counselor (ECF No. 122-12)

- November 16, 2006 - first formal complaint filed (ECF No. 96-2 ¶ 3)

- March 22, 2007 - e-mail to EEO counselor (ECF No. 122-13)

- May 10, 2007 - formal complaint amended (ECF No. 96-2 ¶ 4; 122-13)

- November 1, 2008 - second formal complaint filed (ECF No. 96-2 ¶ 6)

Plaintiff claims that the following acts were adverse employment acts: (1) lowered performance ratings; (2) mid-term progress review; (3) placement on the OIP/PIP; and (4) non-selection as the acting and permanent branch chief. (ECF No. 122 at 17.)

The Magistrate Judge found that Plaintiff had failed to exhaust any claim related to her 2004, 2005, or 2006 performance reviews because she had not contacted an EEO counselor within 45 days of those reviews. (ECF No. 135 at 27 n.2.) The Court agrees with this analysis and, therefore, will not consider any performance review issued prior to June 18, 2006—45 days before Plaintiff's initial contact with her EEO counselor on August 2, 2006. This includes Plaintiff's "Fully Successful" rating given on February 28, 2006. (ECF No. 122-10.)

The Magistrate Judge also found that Plaintiff had not exhausted any claims related to the temporary appointment of Mr. Neff and Ms. Lotus as acting branch chief. The Court agrees. Mr. Neff was appointed acting chief on February 27, 2006 and Ms.

Lotus on May 28, 2006.  Because both of these acts occurred prior to June 18, 2006, the Court cannot consider them in its analysis of whether Plaintiff has met her *prima facie* burden.  *Albert v. Henderson*, 216 F.Supp.2d 1171, 1174 (D. Colo. 2002).

The Court finds that Plaintiff has exhausted claims relating to the following: (1) Plaintiff's July 2006 mid-year performance review; (2) placement on an OIP/PIP on August 15, 2006; (3) placement on a PIP on October 4, 2006; and (4) the selection of Paul Denton as acting branch chief from September 25, 2006 through November 10, 2006.

       2.    <u>Adverse Employment Act</u>

To be an adverse employment action, the employer's conduct must be "materially adverse" to the employee's job status.  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998).  The adverse action must amount to "a significant change in employment status," such as "firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Aquilino v. Univ. of Kansas*, 268 F.3d 930, 934 (10th Cir. 2001) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

       a.    Mid-term progress review and performance plans

The Magistrate Judge held that Plaintiff had not satisfied her *prima facie* burden with respect to placement on the OIP/PIP, the PIP, or the negative mid-term performance review because these were not adverse employment actions.  (ECF No. 135 at 17-26.)  Plaintiff objects arguing that the review and performance plans were adverse employment actions because they made her ineligible for promotion to the branch chief position.  (ECF No. 136 at 3.)

Placement on a performance plan or a negative review "standing alone, is not an adverse employment action." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1224 (10th Cir. 2006). However, if the performance plan or review "effects a significant change in the plaintiff's employment status", it may constitute an adverse action. *Id.* at 1224-25.

Plaintiff argues that she suffered an adverse employment action because her "Fully Successful" rating made her ineligible for promotion to the acting branch chief position. (ECF No. 122 at 18.) The Court agrees that, in these circumstances, a jury could reasonably find that Plaintiff's "Fully Successful" rating was an adverse employment action. *See, e.g., Trujillo v. Bd. of Educ. Of the Albuquerque Pub. Schs.*, 2007 WL 2461630, *9 (D.N.M. May 31, 2007); *Tungol v. Certainteed Corp.*, 202 F.Supp.2d 1189, 1198 (D. Kan. 2002) (poor reviews constituted adverse employment action because made employee ineligible for promotion). However, as discussed above, Plaintiff failed to contact an EEO counselor within 45 days of being given the "Fully Successful" rating and has, therefore, failed to exhaust any claims related to such rating. The Court is therefore precluded from finding that Plaintiff's "Fully Successful" rating could constitute an adverse employment action for purposes of her race discrimination claim.

Plaintiff also contends that the OIP/PIP and PIP were adverse actions because they placed her in "an immediate at risk status" and damaged her reputation and standing at HUD. (ECF No. 122 at 19.) However, the record does not support Plaintiff's contentions. Plaintiff has not shown that she suffered any immediate consequences when the OIP/PIP or the PIP were implemented. Instead, the record shows that her

OIP was removed two months later when her performance improved.  (ECF No. 96-1 ¶ 15.)  Therefore, it appears the OIP/PIP was more akin to an action that "presented [her] with clear goals to achieve her continued employment" than something that placed her in an "immediate at risk status."  *See Haynes*, 456 F.3d at 1225.

Moreover, Plaintiff has failed to show that the mid-term review, placement on the OIP/PIP in August 2006 or placement on the PIP in October 2006 resulted in a significant change in her employment status. She did not lose wages or have her benefits altered based on these acts.  (ECF No. 96-1 ¶ 17.)  She was not given different job responsibilities.  Most critically, she has failed to point to any evidence that her non-selection for the acting branch chief was in any way related to the mid-term performance evaluations or to her being placed on performance improvement plans. Indeed, the evidence she has brought forward points to her not having been considered for the acting branch chief position based on her February 2006 "Fully Successful" rating – an allegedly discriminatory event she failed to exhaust.  (*Id.* ¶ 4.)  As such, Plaintiff has failed to show a genuine factual dispute as to whether her mid-term review or her August and October 2006 performance plans constituted adverse employment actions.  *See Tapia v. City of Albuquerque*, 2006 WL 308267, at *4 (10th Cir. Feb. 10, 2006) (letter of instruction did not constitute adverse employment action; plaintiff continued to work for defendant after receipt of letter and "unrealized threat" that plaintiff could be disciplined for future infractions not enough to make letter itself adverse action); *Rennard v. Woodworker's Supply, Inc.*, 2004 WL 1260309, at * 10 (10th Cir. June 9, 2004) (affirming grant of summary judgment on retaliation claim based on written reprimand despite the fact that reprimand expressly stated that future infractions

-14-

could result in termination; it was undisputed that defendant took no further action against plaintiff with respect to the reprimand and plaintiff showed no "immediate or practical effect on her job status"); *accord Young v. White*, 200 F.Supp.2d 1259, 1274 (D. Kan. 2002) (written reprimand did not constitute adverse employment action in the absence of evidence that reprimand had any negative effect on plaintiff's employment; plaintiff remained employed by defendant three years after reprimand), aff'd, 2003 WL 21940941 (10th Cir. Aug. 14, 2003).

> b.   Promotion to Acting Branch Chief

The Magistrate Judge held that Plaintiff had shown a genuine issue of material fact as to whether her non-selection as acting branch chief in September 2006 was an adverse employment action.  Neither party objects to this finding and it is well supported by the record.  Therefore, the Court finds that Plaintiff's non-selection as acting branch chief in September 2006 constituted an adverse employment action for purposes of Plaintiff's *prima facie* burden.

> 3.   Inference of Discrimination

Because Plaintiff has shown that her non-selection as acting branch chief was adverse employment actions, the Court must determine whether this act occurred under circumstances giving rise to an inference of discrimination.  *PVNF, LLC*, 487 F.3d at 800.  To show an inference of discrimination in a failure to promote context, a plaintiff must show that she applied for and was qualified for the position and that it was ultimately filled by someone outside of the protected class.  *Zambrano v. Block*, 583 F.Supp. 1568, 1570 (D. Colo. 1984).

Though it is a close call, the Court finds that Plaintiff has also set forth sufficient

facts to bring about an inference of discrimination as to her failure to be offered the acting branch chief position.  It is undisputed that Paul Denton—the individual promoted to the acting chief position—was not African-American.  There was no application process for the acting chief position and no explicit qualifications for the position were advertised or posted; rather, the acting chiefs were chosen from the pool of employees on the reviewer staff.  Plaintiff was in the pool of employees from which the acting chief was chosen.  (ECF No. 122-14 at 2-3.)  Though Plaintiff had a lower performance rating than Denton, Plaintiff has submitted evidence showing that her work product was at least as good as his.  (ECF No. 122-25.)  Finally, Plaintiff has shown that an African-American employee who had a higher performance rating than Mr. Denton was not offered the acting chief position.  (ECF No. 122-30.)  Given all of these circumstances, the Court finds that Defendant's failure to promote Plaintiff to the acting chief position gives rise to an inference of racial discrimination.  Plaintiff has therefore met her *prima facie* burden with respect to the failure to promote her to the acting chief position.

    4.    Legitimate Non-Discriminatory Purpose

        Defendant has put forth two bases for not promoting Plaintiff to the acting chief position.  First, only those employees that had an "Outstanding" or "Highly Successful" rating were considered for promotion.  (ECF No. 96-1 ¶ 4.)  Second, the acting director position was offered to employees based on the physical location of their desk in the office.  The person seated at the first desk was offered the position first, followed by the person next to her.  (*Id.*)  The subsequent appointments were to follow the seating pattern.  (ECF No. 122-14 at 2-3.)  Defendant appointed Mr. Depew as permanent chief before they reached the area where Plaintiff's desk was located.  (*Id.* at 3.)

-16-

5.      Pretext

Because Defendant has put forth legitimate, non-discriminatory bases for the

failure to promote Plaintiff, the burden shifts back to Plaintiff to show that the proffered

bases are a pretext for discrimination.  *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th

Cir. 1995).  In order to establish a genuine issue of material fact as to pretext, a plaintiff

must produce evidence that a defendant's non-discriminatory reason is "unworthy of

belief."  *Id*.  A plaintiff can meet this burden with "evidence of such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could rationally

find them unworthy of credence." *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452

F.3d 1193, 1203 (10th Cir. 2006) (quotation omitted). In determining whether plaintiffs

have shown pretext, the Court must consider Plaintiff's evidence in its totality.  *Orr v.*

*City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008).

a.      Inconsistent Explanations

Plaintiff argues that Defendant's basis for hiring the acting branch chief position

has shifted during this litigation and that this shows such basis was pretextual. Showing

that a defendant offered inconsistent or shifting bases for an employment decision is

one method of showing that such decision could be unworthy of credence.  *Jaramillo v.*

*Colorado Judicial Dept.*, 427 F.3d 1303, 1309 (10th Cir. 2005).

In this case, Ms. Baker testified in her deposition that she decided to select the

acting branch chiefs from the "reviewer staff that had the highest ratings, beginning at

the top of the row of the reviewers."  (ECF No. 122-14 at 2.)  In her Declaration in

support of Defendant's Motion for Summary Judgment, Ms. Baker stated that she

-17-

decided to choose the acting branch chiefs from the "reviewers in the unit who were performing at the 'Highly Successful' or higher level." (ECF No. 96-1 ¶ 4.)  Plaintiff contends that these statements are inconsistent. (ECF No. 122 at 31.)  The Court disagrees.  In HUD's performance rating scale, the highest rating is "Outstanding" followed by "Highly Successful", "Fully Successful", "Marginally Successful", and "Unacceptable." (ECF No. 96-1 ¶ 5.)  Ms. Baker's choice of the phrase "highest ratings" (note the plural) at her deposition is entirely consistent with her statement that she considered employees with a "Highly Successful" and "Outstanding" rating for the acting branch chief position.  Even assuming there was some inconsistency between the two statements, it is so minor that it does not show pretext.

> b.      Non-selection of another African-American employee

Plaintiff also argues that Defendant's proffered bases for her non-selection as acting branch chief were pretextual because another African-American woman, Ms. Nettles, had a higher rating than Mr. Denton but was not offered the position. (ECF No. 122 at 31.)  It is undisputed that Ms. Nettles had an "Outstanding" rating while Mr. Denton had a "Highly Successful" rating. (ECF No. 30 & 31.)  However, as discussed above, employees with both a "Highly Successful" rating and an "Outstanding" rating were considered for the position.  Thus, Ms. Nettles's rating does not make her more or less qualified for the position than Mr. Denton.

From the employees that were rated in these two categories, Ms. Baker chose the acting branch chief based on the physical location of their desk.  Plaintiff has offered no evidence to show that Ms. Nettles's desk was in a position that would have entitled her to the opportunity to serve as acting branch chief before Mr. Denton.  In fact,

Plaintiff has offered no evidence showing that the selection of acting branch chiefs based on the physical location of their desks was in any way pretextual.

Additionally, Plaintiff has failed to show a significant disparity between the qualifications of Ms. Nettles and Mr. Denton.  The Tenth Circuit has observed that the Court "must proceed with caution when considering the relative merits of individual employees. The courts may not 'act as a super personnel department that second guesses employers' business judgments.'" *Jaramillo*, 427 F.3d at 1308-09 (quoting *Simms v. Oklahoma*, 165 F.3d 1321, 1330 (10th Cir. 1999).  Minor differences between a candidate that was not chosen for a position and the qualifications of a successful applicant are not sufficient to show pretext.  *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1319 (10th Cir. 1999), overruled on other grounds, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  To show pretext, the disparity in qualifications must be "overwhelming." *Id.* at 1319 (citing *Sanchez v. Philip Morris*, 992 F.2d 244, 247-48 (10th Cir. 1993)); *see also Odom v. Frank*, 3 F.3d 839, 847 (5th Cir. 1993) (explaining that the difference in qualifications must be so glaring as to "jump off the page and slap us in the face").  Nothing in the record shows that there was a significant disparity between a rating of "Outstanding" and a rating of "Highly Successful."

6.   Conclusion

Because Plaintiff has failed to establish a genuine issue of material fact as to whether Defendant's non-discriminatory bases for failing to promote her to the acting branch chief position were pretextual, she has failed to meet her burden on summary judgment.  Accordingly, the Court adopts the recommendation that Defendant's Motion for Summary Judgment be granted on Plaintiff's race discrimination claim and such

claim is dismissed with prejudice.

**F.      Retaliation**

Plaintiff's final claim is that she was retaliated against after contacting the EEO

counselor regarding her discrimination concerns.  The Magistrate Judge found that

Plaintiff had failed to meet her *prima facie* burden of showing retaliation and that, even if

she had made out a *prima facie* case, she failed to show that Defendant's bases for not

selecting Plaintiff as the acting branch chief was pretextual.  (ECF No. 135 at 35-37.)

Plaintiff has objected to these findings.  (ECF No. 136 at 7-8.)

To establish a *prima facie* case of retaliation, Plaintiff must show: (1) she

engaged in a protected activity; (2) a reasonable employee would have found the

challenged action materially adverse; and (3) a causal connection existed between the

protected activity and the materially adverse action." *Argo v. Blue Cross Blue Shield of

Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).  The *McDonnell Douglas* burden

shifting procedure discussed above applies to Plaintiff's retaliation claim.

The Court finds that Plaintiff has met her *prima facie* burden.  Plaintiff's contact

with an EEO counselor is protected activity.  *Anderson v. Coors Brewing Co.*, 181 F.3d

1171, 1178 (10th Cir. 1999).  The failure to promote Plaintiff to the acting branch chief

position is a materially adverse action.  *Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1470

(10th Cir. 1992).  Ms. Baker became aware of Plaintiff's EEO complaint on August 23,

2006.  (ECF No. 122-32.)  Mr. Denton was selected as the acting branch chief on

September 25, 2006.  (ECF No. 96-5 ¶ 2.)  The one month gap between the these two

events is easily sufficient to establish causation for the purposes of Plaintiff's *prima facie*

burden.  *Anderson*, 181 F.3d at 1179 (one and one-half month period between

protected activity and adverse action may, by itself, establish causation).

As discussed above, Defendant has put forth two bases for the failure to promote Plaintiff to the acting branch chief position.  Thus, the issue once again becomes whether Plaintiff can establish a genuine issue of material fact as to whether these asserted bases were merely a pretext for retaliation.  The Court finds that the evidence of pretext is even weaker with Plaintiff's retaliation claim than there is with respect to Plaintiff's discrimination claim.  At the time she became aware of Plaintiff's EEO activity, Ms. Baker had already decided upon and began to institute the process of choosing the acting branch chief based on where an employee's desk was physically located in the office.  There is no evidence that this selection process, or the desk location criterion upon which it was based was manipulated in any way after Ms. Baker learned of Plaintiff's EEO activity.  Of particular importance, too, is the fact that Plaintiff's "Fully Successful" rating—which made her ineligible for the promotion—was given in February 2006, months before she contacted the EEO counselor.

Thus, Plaintiff has failed to meet her burden of showing that triable dispute of material fact exists with regard to whether Defendant's proffered basis for the failure to promote her to the acting branch chief position was a pretext for retaliation.  Accordingly, the Court adopts the recommendation that Defendant's Motion for Summary Judgment be granted as to Plaintiff's retaliation claim.  Plaintiff's retaliation claim is dismissed with prejudice.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, the Court ORDERS as follows:

1.     Plaintiff's objections to the Magistrate Judge's August 1, 2011 Recommendation

(ECF No. 135) are OVERRULED and the Recommendation is ADOPTED;

2.     Defendant's Motion for Summary Judgment (ECF No. 96) is GRANTED;

3.     Plaintiff's racial discrimination, retaliation, religious discrimination, and hostile work environment claims are DISMISSED WITH PREJUDICE;

4.     Plaintiff's *Weingarten* claim and all unexhausted claims are DISMISSED WITHOUT PREJUDICE;

5.     All remaining deadlines and settings, including but not limited to the December 21, 2011 Final Trial Preparation Conference and the five-day jury trial set to commence on January 9, 2012, are VACATED; and

5.     The Clerk shall enter judgment in favor of Defendant on all claims.

Dated this 14th day of November, 2011.

BY THE COURT:

William J. Martínez
United States District Judge